IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2006 Session

# IN RE E.M., II (D.O.B. 08/20/03)

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES
### v.
## CHRISTINA MARIE KEELYN AND EDWARD MALACHOWSKI

An Appeal from the Chancery Court for Shelby County
No. CH-05-0689-3    D. J. Alissandratos, Chancellor

_____

**No. W2006-00663-COA-R3-CV - Filed October 24, 2006**

_____

This is an appeal from an unusual order in a termination of parental rights case. The child involved in this action was placed into state custody soon after the child's birth, because both the mother and the child tested positive for cocaine. The child was placed in the custody of a foster mother who was a single parent. The state filed a petition to terminate the parental rights of the biological parents of the child. After a trial, the trial court terminated the parents' parental rights. Additionally, the trial court *sua sponte* ordered the state to find a suitable dual-parent home in which to place the child and ordered the state to consult with private adoption agencies to accomplish this task. The state now appeals the portion of the trial court's order requiring it to place the child in a dual-parent home. There is no appeal from the termination of parental rights. We reverse the trial court's order regarding placement of the child, concluding that the trial court was without jurisdiction to adjudicate placement of the child after the parents' rights were terminated and the state was given complete guardianship over the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Vacated in Part and Affirmed as Modified**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Paul G. Summers, Attorney General and Reporter, and Douglas Earl Dimond, Senior Counsel, Nashville, Tennessee, for the appellant, State of Tennessee, Department of Children's Services.

**OPINION**

On August 20, 2003, Respondent Christina Marie Keelyn ("Mother") gave birth to a son, E.M., II ("E.M."), the child involved in this petition. Five days later, E.M. was placed in the custody of Petitioner/Appellant State of Tennessee, Department of Children's Services ("DCS") because he and Mother both tested positive for cocaine. The child was placed with a foster mother, Debbie Vanlillen ("Foster Mother"),[1] a single parent who also had a daughter living in her home. Permanency plans were developed by DCS for both Mother and the father of the child, but the parents did not comply with the plans.

In April 2005, DCS filed a petition to terminate the parental rights of E.M.'s biological parents. An amended petition was later filed. On January 20, 2006, the trial court conducted a trial on the amended petition for termination. Neither of the parents appeared at trial. Theresa Ray ("Ray"), the DCS caseworker assigned to the case, testified in support of DCS's petition. Ray testified that E.M. had been placed with Foster Mother since he was five days old, and that the child was "doing wonderfully" in her care. Ray also stated that, if the parental rights of the biological parents were terminated, Foster Mother wished to adopt the child.

The trial judge questioned Ray on the witness stand about why E.M. was not placed in a foster home with two parents. Ray responded that it is not always possible to find a husband-and-wife placement for foster children, and that securing such an arrangement can be difficult. The trial judge specifically asked Ray whether any husband-and-wife foster homes had been willing to take the child when E.M. was born, and whether any such two-parent foster homes were available at the time of trial. Ray could not verify whether any two-parent foster homes were available when E.M. was born, or whether any such homes were available at the time of trial. She remarked that, in general, a dual-parent foster home is preferable to a single-parent foster home.

At the conclusion of trial, the trial court granted the DCS petition, terminating the parental rights of the biological parents based on abandonment, substantial noncompliance with the permanency plans, and persistent conditions that led to the removal of the child. *See* T.C.A. § 36-1-113(g)(1), (g)(2), and (g)(3)(A) (2005). As is customary, the trial court awarded "complete custody, control and guardianship of said child" to DCS, including "the right to place said child . . . for adoption and to consent to such adoption *in loco parentis*."

The trial court, however, included an additional proviso in its order, without a request by any party. The trial court held that it was "not in the best interest of the minor child . . . for the State of Tennessee to pursue the option of a single-parent adoption placement if a dual-parent option is available." Accordingly, the trial court *sua sponte* ordered DCS "to make every reasonable effort to find a suitable dual-parent placement for said child," and added that "should [DCS] be unable to locate a suitable dual-parent replacement, [DCS] shall consult with a private adoption agency." DCS

---

[1]In the trial court's order, the foster mother's last name is spelled Van Leuven.

now appeals the portion of the trial court's order requiring it to place the child in a dual-parent home. There is no appeal from the termination of the parental rights of the biological parents.

On appeal, DCS argues that the trial court exceeded its authority by ordering DCS to place E.M. in a dual-parent adoptive home and to consult with a private adoption agency for this purpose. DCS maintains that the relevant statutes grant DCS the exclusive right to place the child for adoption and the right to consent to the adoption, and that the trial court is without jurisdiction to adjudicate matters involving placement of the child. The facts in this case are undisputed, and the issue raised by DCS is purely a question of law, which we review *de novo*, with no presumption of correctness. *In re Adoption of Copeland*, 42 S.W.3d 483, 485 (Tenn. Ct. App. 2000).

In support of its position, DCS relies upon Tennessee Code Annotated § 36-1-102(25)(C)(ii). Pursuant to this statute, an order granting guardianship of a child to an entity or individual pursuant to a termination of parental rights "shall permit the entity to place the child for adoption and to consent to the adoption." T.C.A. § 36-1-102(25)(C)(ii) (2005). That statute provides:

> (ii) Complete guardianship . . . pursuant to the termination of the rights of a parent or guardian of a child under this part . . ., and pursuant to the entry of an order of guardianship as provided in this part, . . . ***shall*** permit the entity to place the child for adoption and to consent to the adoption . . . and ***shall*** authorize the court to proceed with and grant an adoption, without further termination of parental or guardian rights. . . .

*Id.* (emphasis added). Thus, the statute grants the guardian, in this case DCS, the exclusive authority to place the child for adoption and to consent to the adoption, and confers no authority on the trial court to interfere with the guardian's exclusive authority.

Similarly, Tennessee Code Annotated § 36-1-113(m) provides that, once parental rights are terminated, the trial court may award guardianship of the child to an agency, with the right to place the child for adoption. That statute provides in pertinent part:

> (m) Upon termination of parental or guardian rights, the court may award guardianship or partial guardianship of the child to a licensed child-placing agency or the department in any separate proceeding of the child **with the right to place the child for adoption and with the right to consent to the child's adoption**, or to any prospective adoptive parent(s) with the right to adopt the child, as the case may be, subject to the remaining rights, if any, of other parent(s) or guardian(s) of the child.

T.C.A. § 36-1-113(m) (2005) (emphasis added). Like section 36-1-102(25)(C)(ii), this statute indicates that, once the parental rights are terminated, DCS has the exclusive right to place the child for adoption and consent to the child's adoption following a termination of parental rights.

A similar situation was presented in ***DCS v. E.G.P.***, No. E2003-00433-COA-R3-CV, 2003 WL 22134896 (Tenn. Ct. App. Sept. 12, 2003). In that case, the juvenile court found a twelve-year old mentally challenged girl to be dependent and neglected and awarded custody of her to the state. Two years later, the girl became pregnant. ***E.G.P.***, 2003 WL 22134896, at *1. A year after that, the girl and her baby were homeless, and they were returned to DCS custody. Various foster home placements were unsuccessful. The juvenile court eventually entered an order requiring DCS to place the girl (by then she was sixteen years old) and her baby together in an adoptive home. DCS did not comply with this order. The trial court then held DCS in contempt and issued further orders requiring that the girl and her baby be placed together. ***Id.*** at *2-*3. DCS appealed. This Court reversed the trial court's order that the girl and her baby be placed together. The appellate court determined that, under Tennessee Code Annotated § 37-1-129(e), the responsibility for the protection of children lies, in the first instance, with DCS. ***Id.*** at *3. That statute provides in pertinent part:

> (e)(1) Any order of the court that places custody of a child with the department shall empower the department to select any specific residential or treatment placements or programs for the child **according to the determination made by the department, its employees, agents or contractors**.

T.C.A. § 37-1-129(e) (2005) (emphasis added). Based on this statute, the ***E.G.P.*** court held, DCS was vested with the responsibility of protecting the children, and "[t]he juvenile court cannot usurp the properly exercised functions of the DCS. . . . [I]nitial determinations respecting placements are the responsibility and prerogative of [DCS]." ***E.G.P.***, 2003 WL 22134896, at 3.

As in ***E.G.P.,*** when DCS is granted guardianship of a child pursuant to a termination order, the statutes, quoted above, confer upon the guardian, not the trial court, the authority to place the child for adoption following a termination of parental rights, including the authority to select for the child a prospective adoptive placement. The adoption itself, of course, may be subject to judicial review in a separate proceeding. ***See*** T.C.A. § 36-1-124 (2005).

In this case, the trial court appointed DCS as the guardian for E.M. "with the right to place said child . . . for adoption . . . ." After doing so, the trial court did not have the authority to go on to require DCS to make efforts to place the child in a dual-parent home; this portion of the trial court's order constituted a usurpation of DCS's exclusive right to place the child and consent to adoption. Therefore, the portion of the trial court's order requiring DCS "to make every reasonable effort to find a suitable dual-parent placement for said child" and to "consult with a private adoption agency" for this purpose must be vacated.[2]

---

[2]No opposition to DCS's position was filed in this appeal.

The decision of the trial court is vacated in part and affirmed as modified. Costs on appeal are to be taxed to the Appellant State of Tennessee, Department of Children's Services.

_____

HOLLY M. KIRBY, JUDGE